UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

```
--------------------------------------------------------X
OPTASIA, INC.                          :          Civil Case No.
                                       :
                 Plaintiff,            :
                                       :          ADMIRALTY
        vs                             :
                                       :
NAVIG8 LIMITED; and NAVIG8             :
PTE LIMITED                            :
                 Defendants,           :
                                       :
        and                            :
                                       :
NAVIG8 AMERICA, LLC,                   :
NAVIG8 CHEMICALS AMERICA,              :
LLC, and NAVIG8 PRODUCT                :
TANKERS, LLC.                          :
                 Garnishees            :
-------------------------------------------------- x
```

**VERIFIED COMPLAINT WITH PRAYER FOR PROCESS
OF MARITIME ATTACHMENT AND GARNISHMENT**

Plaintiff OPTASIA, INC. ("OPTASIA" or "Plaintiff") files this Verified Complaint

against NAVIG8 LIMITED, LLC and NAVIG8 PTE LIMITED ("Defendants"), and for

its claim avers and pleads as follows.

**PARTIES, JURISDICTION, AND VENUE**

1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of

the Federal Rules of Civil Procedure and falls under this Court's admiralty and maritime

jurisdiction pursuant to 28 U.S.C. § 1333 and the Federal Arbitration Act, 9 U.S.C. §§ 4, 8

in aid of maritime arbitration. Plaintiff brings this action pursuant to Rule B of the

Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Rule

B") to obtain security for maritime claims pending in arbitration proceedings in London,

and in a suit to be commenced against NAVIG8 LIMITED in the High Court of London. Plaintiff seeks an order and writ of attachment over property of Defendants NAVIG8 LIMITED and NAVIG8 PTE LIMITED, including but not limited to the Defendants' legal and/or equitable limited liability company interest in the Delaware limited liability companies Navig8 Chemicals America, LLC, Navig8 Product Tankers, LLC, and Navig8 America, LLC (hereinafter collectively referred to as "Garnishees"), which Defendant NAVIG8 LIMITED owns through its intermediary corporate subsidiaries, Navig8 Chemicals Europe Limited and Navig8 Europe Limited, and any credits or effects of Defendants in the hands of the said Garnishees, including but not limited to accounts, debts, dividends, contractual rights, and any intangible property whatsoever of Defendants NAVIG8 LIMITED and NAVIG8 PTE LIMITED in the hands of the Garnishees up to the amount claimed hereunder.

2.      At all times material hereto, Plaintiff OPTASIA, INC. (hereinafter also referred to as "OPTASIA" or "Plaintiff") was and is a business entity organized under the laws of the Republic of the Marshall Islands and was the registered owner of the Motor Tanker NAVIG8 SPIRIT, a vessel registered in the Ship's Register of the Marshall Islands.

3.      At all times material hereto, Defendant NAVIG8 LIMITED was and is a corporate entity organized and existing under the laws of the Bailiwick of Jersey, Channel Islands.

4.      At all times material hereto, Defendant NAVIG8 PTE LIMITED (hereinafter also "CHARTERER") was and is a corporate entity organized under the laws of Singapore.

5.      At all times material hereto, Garnishee Navig8 America, LLC was and is a limited liability company organized and existing under the laws of Delaware and has as its registered agent Corporation Service Company, 2711 Centerville Rd. Suite 400, Wilmington, Delaware.

6.      At all times material hereto, Garnishee Navig8 Chemicals America, LLC was and is a limited liability company organized and existing under the laws of Delaware and has as its registered agent Corporation Service Company, 2711 Centerville Rd. Suite 400, Wilmington, Delaware.

7.      At all times material hereto, Garnishee Navig8 Product Tankers, LLC was and is a limited liability company organized and existing under the laws of Delaware and has as its registered agent Corporation Service Company, 2711 Centerville Rd. Suite 400, Wilmington, Delaware.

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1333 because this action arises from a maritime contract – *i.e.,* a bareboat charter party, which was breached when the CHARTERER failed to repair numerous items of damage to the chartered Vessel and redeliver her at the expiration of the charter term in the same good order and condition as she was upon delivery, as well as the performance guarantor/co-obligor's breach of its contract to effect said repairs following the CHARTERER's failure to honor its obligations under the charter party.

## FACTS

9.      On or about August 23, 2007, Plaintiff agreed to charter its Motor Tanker FR8 SPIRIT, since renamed NAVIG8 SPIRIT (the "Vessel"), to NAVIG8 PTE LIMITED on an amended "BARECON 89" bareboat charter party form (hereinafter also referred to

as "the bareboat charter") for a period of about eight (8) years with a right to extend the

charter term for additional period of two years at charterers' option.  A copy of the charter

party is attached hereto as **EXHIBIT 1**.

10.     Plaintiff duly delivered the Vessel to NAVIG8 PTE LIMITED in good

order and condition, and the Vessel and entered upon its service.

11.     During the term of the bareboat charter, NAVIG8 PTE LIMITED

requested and OPTASIA agreed to a reduction in the daily hire rate to $10,910 per day

for the period August 1, 2012 to July 31, 2013, and the parties executed an addendum to

the charter party to that effect on July 17, 2012. The parties also agreed in the addendum

to the charter party that, for the period August 1, 2013 to August 31, 2015, the daily charter

hire would revert to the original rate.  The addendum provided further that, for the period

September 1, 2015 to September 1, 2016, the hire rate would decrease to $6,730 per day,

less $30 per day broker's commission, with OPTASIA agreeing to a 50/50 profit split with

CHARTERER on actual cash earnings it received above the charter hire rate and its actual

operating expenses.  A copy of the Addendum No. 1 is hereto attached as **EXHIBIT 2**.

12.     To induce OPTASIA to agree to the Addendum No. 1, Defendant NAVIG8

LIMITED issued its Performance Guarantee in favor of OPTASIA. The Performance

Guarantee which is dated 17 July 2012, warrants the corporate ownership and control of

the Charterer by NAVIG8 LIMITED and also provides in relevant part:

> We hereby confirm that ***we legally and beneficially own a controlling stake
> in the issued share capital of the Charterer***….
>
> In consideration of your agreeing to enter into an addendum to the Charter
> on or about the date hereof, we hereby irrevocably and unconditionally
> guarantee to you, ***as primary obligor and not merely as surety***, that the
> Charterer will pay to you in full when due each sum payable from time to
> time under and in connection with the Charter and will perform fully all of

its other obligations under the Charter.  If for any reason the Charterer should fail to pay you when due any amount for which it is liable under or in connection with the Charter or should fail to perform any of its obligations under the Charter in a timely manner and such failure continues for a period of 10 days from the date on which the relevant payment or the performance of any other obligation is due, we undertake to:

1. *pay any amount owing* under or in connection with the Charter directly to you, immediately upon your first demand; and

2. *perform any obligations* under or in connection with the Charter, immediately upon your first demand

A copy of the performance guarantee is hereto attached as **EXHIBIT 3.**

13.     In accordance with the concept of bareboat chartering and the express provisions of the Bareboat Charter (EXHIBIT 1), it was the obligation of CHARTERER, at its cost, to appoint its own Master and crew; victual and supply all necessary deck, engine and cabin stores, provisions, and bunkers; and take out all hull and machinery, war risks, and P&I insurances.

14.     Additionally, CHARTERER was obligated, at its expense, to ensure that all surveys were undertaken, to maintain the Vessel in class, and to undertake, pursuant to Clause 9 of Part II of the Charter Party, all maintenance and repairs of the Vessel during the currency of the charter, having an obligation to redeliver the Vessel to her owner under Clause 14, in the same good order and condition as on delivery to the CHARTERER at the commencement of the charter, fair wear and tear not affecting class excepted.

15.     On or about September 13, 2016, OPTASIA sent CHARTERER a comprehensive list of over one hundred thirty (130) observed defects relating to the Vessel's state that CHARTERER was required to remedy before redelivering the Vessel. Plaintiff's representatives discovered these defects on September 2, 2013 and included them in its report to CHARTERER, at which time CHARTERER severely restricted Plaintiff's representatives' lawful access onboard the Vessel, thereby preventing a

Case 1:16-cv-01327-UNA   Document 1   Filed 12/29/16   Page 6 of 15 PageID #: 6

complete pre-redelivery inspection. The attenuated inspection performed despite CHARTERER's restrictions nevertheless revealed that the Vessel was in an extremely poor state with numerous hull and machinery items in urgent need of repair.

16.     On or about September 19, 2016, the Vessel went into dry dock in Senegal for repairs and her class survey.  On the same day, CHARTERER gave a seven-day redelivery notice to Plaintiff.

17.     On or about September 21, 2016, Plaintiff's representatives again sought to board the Vessel to conduct a full pre-redelivery inspection.   Again, CHARTERER severely restricted Plaintiff's representatives' lawful access onboard.

18.     In spite of CHARTERER's wrongful efforts, Plaintiff's representatives discovered, *inter alia,* the Vessel's cargo and ballast tanks were in a state of disrepair and urgently needed attention; CHARTERER had failed to maintain and repair the Vessel as it was contractually bound to do under the Bareboat Charter Party; and CHARTERER tendered redelivery of the Vessel in a damaged condition, which far exceeded fair wear and tear not affecting class, necessitating extensive repairs to restore the Vessel in such seaworthy order and condition as was necessary for the Vessel to be acceptable to her subsequent charterers for further employment and retain the market value commensurate with a vessel of her type, description and age.

19.     The damages to the Vessel discovered after redelivery inspections and surveys includes, without limitation, the following: various deformations to hull; damage to the propeller; damage to the rudder's coating; damage to the coating of the Vessel's bottom; damage to various other coatings on the Vessel; damage to various hoses; damage to the bellows on the steam lines; rusting under the heating coils; damage to the internal

coating of cargo tanks; extensive damage and deterioration to cargo pipes on the deck; corroded and wasted supports and structural components, which were painted over to cover up the rust; and damage to the main engine from water intrusion.

20.     On or about September 29, 2016, Plaintiff sent CHARTERER an updated list of various defects and items requiring repairs discovered during Plaintiff's representatives' September 21, 2016 inspection.

21.     On or about September 30, 2016, repairs that required dry docking the Vessel were completed.

22.     Between September 30 and October 2, 2016, TMC Marine, an independent surveyor, conducted a further inspection of the Vessel's condition and found her to be in a substantial state of disrepair, determining that CHARTERER had failed to provide even basic maintenance, with the advanced state of the Vessel's deterioration being the obvious result of consistent neglect.

23.     The myriad of items TMC Marine's report found to be broken-down, damaged and deteriorated included: several indentations in the hull; stern tube seals that had not been removed; damage to the propeller; damage to the rudder's coating; rust stains on the bottom of the Vessel; incomplete and poor quality repairs to one of the control cabinet boxes; broken-down pumps, compressor and purifier; the complete removal from the Vessel of her overhaul maintenance reports; several critical pieces of machinery in need of critical overhauling; various leaking seals on the main engine; numerous non-functioning pieces of equipment in the engine room; cargo tank 3 and starboard tank 2 in poor state of repair; various cargo tanks needing to be recoated; damage to the bellows on the steam lines; and the absence of data logger information.

24.     TMC Marine's survey found that CHARTERER destroyed prior to redelivery the data from the data logger stored in the engine control room and destroyed all overhaul reports, making the task of restoring the Vessel to good operating condition time-consuming, difficult, and expensive.

25.     CHARTERER redelivered the Vessel on or about October 2, 2016.

26.     Plaintiff's estimated total costs for repairing / restoring the Vessel to a good repaired state, as she should have been on redelivery, is approximately $1,199,117.13. (ONE MILLION ONE HUNDRED NINETY-NINE THOUSAND ONE HUNDRED AND SEVENTEEN DOLLARS AND THIRTEEN CENTS).

27.     Plaintiff made due demand on CHARTERER to effect the repairs to the Vessel as required under the Bareboat Charter, but CHARTERER has refused.

28.     After more than ten days of continuing and sustained failure of CHARTERER to honor its contractual obligations despite Plaintiff's demand that it undertake or pay for the repairs, Plaintiff made due demand in writing on NAVIG8 LIMITED as performance guarantor and co-obligor of CHARTERER in accordance with the express provisions of the Performance Guarantee, as noted in the foregoing ¶12, requiring NAVIG8 LIMITED to make the necessary repairs at its own, time, cost and expense.  NAVIG8 LIMITED refused.

**ARBITRATION AND ADJUDICATION IN LONDON**

29.     Clause 26 of the Charter Party provides that any dispute arising between owners and CHARTERER shall be referred to arbitration in London, with English law to apply.

30.     NAVIG8 LIMITED's July 17, 2012 Performance Guarantee provides in relevant part: "This guarantee shall be governed by, and construed in accordance with, English law.  We hereby irrevocably submit to the exclusive jurisdiction of the English courts to settle and [*sic*] dispute or proceedings arising out of or in connection with this guarantee." **EXHIBIT 3**.

31.     Plaintiff has commenced maritime arbitration under Clause 26 by appointing and giving CHARTERER notice of the appointment of its chosen arbitrator and of Plaintiff's intent to refer its claims against CHARTERER to arbitration.  Likewise, Plaintiff intends to initiate proceedings in English court against NAVIG8 LIMITED pursuant to the terms of the Performance Guarantee and NAVIG8 LIMITED's refusal to honor its obligations thereunder.

32.     Plaintiff will claim in the London maritime arbitration and English court proceedings damages for failure to redeliver the Vessel in good order and condition as required under the Bareboat Charter, as well as other losses and damages specifically set forth in the foregoing pleading at ¶¶ 9-28 in the principal amount of $1,199,117.13 (ONE MILLION ONE HUNDRED NINETY-NINE THOUSAND ONE HUNDRED AND SEVENTEEN DOLLARS AND THIRTEEN CENTS), together with interest at the rate of 3.65% compounded at quarterly intervals, which is estimated to be $44,370.50 (FOURTY-FOUR THOUSAND THREE HUNDRED SEVENTY DOLLARS AND FIFTY CENTS) from the time it was due and payable to the projected date of the award, *i.e.* September 31, 2017.

33.     It is customary for London maritime arbitrators and English courts to award to the prevailing party its legal fees, arbitrators' fees, costs for the rental of the arbitration

premises, and costs for the attendance of witnesses, which Plaintiff estimates will be no less than $400,000 (FOUR HUNDRED THOUSAND DOLLARS).

34.    Based on the foregoing, Plaintiff's total claim in arbitration and/or English court proceedings is estimated to be **$1,643,487.63** (ONE MILLION SIX HUNDRED FORTY-THREE THOUSAND FOUR HUNDRED AND EIGHTY-SEVEN DOLLARS AND SIXTY-THREE CENTS).

## NAVIG8 LIMITED'S RELATIONSHIP TO THE GARNISHEES

35.    At all times material hereto NAVIG8 LIMITED was and is the ultimate beneficial owner of the legal and/or equitable controlling limited liability company interest in garnishee NAVIG8 AMERICA, LLC which NAVIG8 LIMITED holds directly or through its wholly-owned subsidiary, Navig8 Europe, Ltd.  *See* Declaration of Daniel Chu dated October 8, 2010, filed in the United States District Court for the District of Connecticut in *Harpa Shipping & Chartering GMBH & Co. KG v. Emirates Trading Agency (L.L.C.*), civil action 3:10-cv-01260-MRK, at ¶ 8, hereto attached as **EXHIBIT 4**; *See also* Declaration of Daniel Chu dated October 18, 2010, filed in the United States District Court for the District of Connecticut in *Harren & Partners Schiffahrts CMBH & CO. v. Emirates Trading Agency (L.L.C.),* civil action 3:10-cv-01262-CFD, at ¶ 8, hereto attached as **EXHIBIT 5**. *See also* Consolidated Financial Statements of Navig8 Europe Limited for the year ended March 31, 2015 at pages 17 and 21, which is attached hereto as **EXHIBIT 6**.

36.    At all times material hereto, NAVIG8 LIMITED was and is the ultimate beneficial owner of the legal and/or equitable controlling limited liability company interest in garnishee NAVIG8 CHEMICALS AMERICA, LLC, which NAVIG8 LIMITED holds

directly or through its wholly-owned subsidiary, Navig8 Chemicals Europe, Ltd. *See* Corporate Disclosure Statement of NAVIG8 CHEMICALS AMERICA, LLC filed in the United States District Court for the District of Connecticut in *Olav Ekeberg v. Navig8 Chemicals America, LLC*, Civil Action No. 3:16-cv-00262-JAM hereto attached as **EXHIBIT 7**. *See also* Consolidated Financial Statements of Navig8 Chemicals Europe Ltd. for the year ended March 31, 2015, at pages 16 and 19, which is attached hereto as **EXHIBIT 8**.

37.     At all times material hereto, NAVIG8 LIMITED was and is the ultimate beneficial owner of the legal and/or equitable controlling limited liability company interest in garnishee NAVIG8 PRODUCT TANKERS, LLC.   *See* Consolidated Financial Statement of Navig8 Chemical Tankers, Inc. and subsidiaries at pages F-31 and F-32, which is attached hereto as **EXHIBIT 9**.

38.     At all times material hereto, NAVIG8 LIMITED was and is a creditor of Garnishees NAVIG8 AMERICA, LLC, NAVIG8 CHEMICALS AMERICA, LLC and NAVIG8 PROCUCT TANKERS, LLC, which are its closely-held subsidiaries, are indebted to it, and regularly transact business for its benefit and on its behalf.   *See* **EXHIBIT 6** at p. 21; **EXHIBIT 8** at p. 19; and **EXHIBIT 9** at pp. F-31, F-32.

**APPLICATION FOR ATTACHMENT UNDER**
**SUPPLEMENTAL ADMIRALTY RULE B**

39.      On the basis of the facts alleged above, Plaintiff has a valid maritime claim for the breach of a maritime contract, *i.e.* a bareboat charter party.

40.     Defendants NAVIG8 PTE LIMITED and NAVIG8 LIMITED are not present and cannot be found in the District of Delaware within the meaning of Rule B. *See* Attorney Declaration of Michael McCauley, attached hereto as **EXHIBIT 10.**

41.     Nevertheless, Defendant NAVIG8 LIMITED has within the District tangible or intangible personal property in the hands of persons or entities present in the forum who may be named as garnishees in the process of maritime attachment and garnishment, with said property consisting of debts, credits, or effects that may include, without limitation, the following: stocks; corporate shares; interests in limited liability companies; loan repayments; accounts payable; dividends payable; and payments held or which may be receivable by and/or payable to the said garnishee on behalf of and/or for the benefit of the Defendant.

42.     More particularly, Defendant NAVIG8 LIMITED's subsidiaries and debtors that are named as garnishees in this Verified Complaint -- NAVIG8 AMERICA, LLC, NAVIG8 CHEMICALS AMERICA, LLC, and NAVIG8 PRODUCT TANKERS, LLC -- were formed in Delaware, are Delaware limited liability companies, and each have as their respective registered agent for service of process the same entity: Corporation Service Company, 2711 Centerville Rd., Suite 400, Wilmington, Delaware 19808.

43.     As noted in ¶ 5 above, Defendant NAVIG8 LIMITED is the ultimate beneficial owner of the legal and/or equitable controlling limited liability company interest in garnishee NAVIG8 AMERICA, LLC.

44.     As noted in ¶ 6 above, Defendant NAVIG8 LIMITED is the ultimate beneficial owner of the legal and/or equitable controlling limited liability company interest in garnishee NAVIG8 CHEMICALS AMERICA, LLC.

45.     As noted in ¶ 7 above, Defendant NAVIG8 LIMITED is the ultimate beneficial owner of the legal and/or equitable controlling limited liability company interest in garnishee NAVIG8 PRODUCT TANKERS, LLC.

46.     All named Garnishees are indebted to Defendant NAVIG8 LIMITED as alleged in the foregoing ¶¶ 26-34.

47.     Plaintiff has maritime claims cognizable in admiralty against the Defendants arising out of a maritime contract, *i.e.* a bareboat charter party.

48.     The reasonably estimated amount of Plaintiff's claim is as follows:

| | | |
|---|---|---|
| a) | Damages and costs for failure to redeliver the Vessel in good order and condition ………………….. | $1,199,117.13 |
| b) | Interest (at the rate of 3.65%) on the outstanding principal compounded quarterly for one year   ……………………………….. | $   44,370.50 |
| c) | Legal fees and arbitration costs………………………….. | $ 400,000.00 |
| | | ----------------- |
| | TOTAL | $**1,643,487.63** |

49.     Therefore, Plaintiff's total claim for breach of the maritime contract is in the aggregate sum of **$1,643,487.63** (ONE MILLION SIX HUNDRED FORTY-THREE THOUSAND FOUR HUNDRED EIGHTY-SEVEN DOLLARS AND SIXTY-THREE CENTS)**.**

**WHEREFORE**, Plaintiff prays as follows:

A.     That process in due form of law, according to the practice of this Honorable Court in matters of admiralty and maritime jurisdiction, be issued against Defendants NAVIG8 LIMITED and NAVIG8 PTE LIMITED and that said Defendants be cited to appear and answer the allegations of this Verified Complaint;

B.     That, as Defendants cannot be found within this District for the purposes of Rule B, all of the personal property, both tangible and intangible, in the hands of garnishees served in this District, consisting of debts, credits, or effects, including but not limited, to: corporate stock and /or shares and /or limited liability company interests

Defendants have in any business entities, corporations and/or limited liability companies named as garnishees in the Process of Maritime Attachment and Garnishment; any debts, whether matured or un-matured, owing to the said Defendants by such garnishees; and any accounts, checks, payments, transfers, and any other tangible or intangible property whatsoever of which Defendants are beneficiaries, in the hands of garnishees named in the Process of Maritime Attachment and Garnishment, should be attached and seized pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions;

C.      That Judgment be entered in favor of Plaintiff OPTASIA, INC. against Defendants NAVIG8 LIMITED and NAVIG8 PTE LIMITED in the sum of **$1,643,487.63** and the proceeds of the assets attached be applied in satisfaction thereof;

D.      That the Court grant Plaintiff such other and further relief as it deems, just, equitable and proper.

Dated: December 29, 2016                          Respectfully submitted,

                                                  PALMER BIEZUP & HENDERSON, LLP

                                                  /s/  Michael  B.  McCauley
                                                  Michael B. McCauley (ID 2416)
                                                  1223 Foulk Road
                                                  Wilmington, DE 19803
                                                  Tel: 302-594-0895
                                                  Fax: 302- 478-7625
                                                  E-mail: mccauley@pbh.com
                                                  *Attorneys for Plaintiff*

*Of counsel:*

CHALOS & CO., P.C.
George A. Gaitas
(*pro hac vice application forthcoming*)
7210 Tickner Street
Houston, Texas 77055
Telephone: 713-936-2427
Facsimile: 713-782-5274
E-mail: georgegaitas@chaloslaw.com